No. 35,219

PHYLLIS M. NICHOLS, *Appellant*, v. PAUL DERRY et al., *Appellees*.

(118 P. 2d 537)

Opinion filed November 8, 1941.

*M. A. Gorrill, Henry H. Asher* and *Clarence M. Gorrill*, all of Lawrence, for the appellant.

*Edward T. Riling* and *John J. Riling*, both of Lawrence, for the appellees.

The opinion of the court was delivered by

HOCH, J.: This is an appeal from a judgment for the defendants in an action to recover damages for personal injuries received in an

automobile collision. Plaintiff, appellant here, was riding in a car driven by her son. The question presented is whether the court erred, to the prejudice of appellant, in refusing or failing to give a requested instruction concerning the emergency doctrine in the law of negligence.

On December 24, 1939, appellant was riding in a car driven by her son, Ray U. Nichols. Another son was riding in the back seat. The car was proceeding eastward on a graveled road south of Lawrence, Kan. There had been some rain and sleet the day or night before and the road was more or less soft and spongy. A truck owned by Guy W. Hinsen and being driven by Paul Derry was proceeding westward on the same road when the two cars collided. Appellant suffered severe and painful injuries for which she sought damages from the owner and driver of the truck in the sum of $4,462.34. The action was based on alleged negligence of the driver of the truck. The answers of both defendants denied that the truck was being carelessly or negligently operated and alleged that the collision resulted solely from the negligent operation of the car in which plaintiff was riding and from her negligence contributory thereto.

The case was tried in November, 1940, and a verdict returned for the defendants. The jury also answered special questions as follows:

"Q. Do exhibits 5 and 19 show on the highway where the collision took place between the truck driven by Derry and the automobile by Ray U. Nichols? A. Yes.

"Q. Did Ray U. Nichols drive his automobile from the south side of the highway past the center thereof over on the north side and continue on east upgrade some distance on the north side, run into the truck operated by Jack Derry? A. Yes.

"Q. Did Ray U. Nichols drive his automobile into the truck operated by Jack Derry? A. Yes.

"Q. Was Ray U. Nichols guilty of negligence in the operation of his car before and at the time of the collision with the truck operated by Jack Derry? A. Yes.

"Q. Did Jack Derry drive the truck west on the north side of the center of said highway for some distance up to where the collision took place between the truck he was driving and the Nichols car? A. Yes.

"Q. Was the truck operated by Jack Derry at the time of the collision with the Nichols car on the north side of the center of the traveled portion of the highway? A. Yes, he was north of center of highway.

"Q. Was Jack Derry guilty of any negligence in the operation of the truck at the time and immediately before the collision with the Nichols car? A. No.

"Q. If you answer question number 6 'Yes,' then set out in detail what negligence Jack Derry was guilty of. A. None.

"Q. Did the plaintiff, Phyllis M. Nichols, have full opportunity to see and

know the manner in which Ray U. Nichols was operating the car in which she was riding prior to and at the time his car collided with the truck operated by Jack Derry? A. Yes.

"Q. Did the plaintiff, Phyllis M. Nichols, object to or protest against the manner or way in which Ray U. Nichols operated the car in which she was riding at the time of the collision or prior therto? A. No.

"Q. Did the plaintiff in this action, Phyllis M. Nichols, warn or notify the driver of the car in which she was riding of any danger that was ahead of her on the road at the time of the collision or any time prior thereto? A. No."

It is not disputed that the collision took place on the north side of the center line of the highway in the lane normally belonging to the defendants' truck. It was the contention of the appellant, however, and of her son, the driver, that when they first saw the truck approaching from the east about 75 to 85 yards away it was swaying from side to side and was traveling at a high rate of speed on the south side of the highway; that when it appeared that the oncoming truck was not going to get back into the north lane the son turned his car sharply to the left and that about that time the truck turned back into the north lane; that there was then not room enough to pass it on the right and there was no way to avoid the collision. These allegations were denied by defendants. Derry, driver of the truck, testified that he was traveling at not more than twenty-five miles an hour; that he was traveling in the main traveled track which was at that point on the north side of the road; that when he first saw the Nichols car it was about fifty or sixty yards ahead of him; that the right wheels were outside in the soft slush and spinning; that he immediately took his foot off the gas and applied the brakes; that then the approaching car "evidently caught on solid gravel"; that it shot across the road in front of his truck and the collision followed. He testified that his truck was not traveling over five miles an hour when the collision occurred. Michael Torhan, who was a passenger on the truck and was sitting beside Derry, gave similar testimony by affidavit. There were a number of other witnesses whose testimony need not be recited.

Appellant does not contend that the trial court did not properly instruct the jury on the general subject of negligence and contributory negligence, but rests this appeal solely on failure to give the following instruction which was requested:

"As to the subject of contributory negligence, you are instructed that where the driver of an automobile is placed in such a position by the negligence of the defendant as to be compelled instantly to choose, in the face of apparently grave and impending peril, between two hazards, and he makes such a choice

as an ordinarily prudent person might make under a like situation, he is not necessarily negligent if it turns out that if he had chosen the other hazard he might have avoided the collision and avoided the resulting injuries."

Appellant relates that during the course of the instructions, which were given orally and not in writing, as provided by the statute (G. S. 1935, 60-2909, ¶ 5), the court paused and asked counsel for both parties if there were any further instructions which they desired to have given; that at that time counsel for plaintiff stated that instructions had been asked on the "emergency doctrine" and had not been given; that the court replied that he thought he had done so and counsel for defendants expressed the same belief.

The instruction which the court gave with reference to action taken in an emergency is as follows:

"In connection with contributory negligence, I have to advise you that if Mrs. Nichols was riding as an occupant of the car driven by her son, it would be her duty to instruct or advise her son to operate his car in a reasonably prudent manner, if he were not doing so. If, for instance, her son was operating the car in a reasonably prudent manner and a sudden emergency developed, and he did not take the right course, and Mrs. Nichols did not have an opportunity to warn him, then she could not be charged with any negligence on the part of her son. So, you can see the element of time plays some part in the question of whether or not there is contributory negligence on the part of Mrs. Nichols."

Appellees contend not only that the instructions given adequately stated the emergency doctrine, but that defendant Derry was guilty of no negligence creating any emergency to be met by the driver of the Nichols car. It may well be argued that the instructions given did not clearly state the emergency rule, particularly as to the driver of the Nichols car. It did, however, emphasize, in appellant's favor, the element of time as regards failure to warn the driver in an emergency, if such an emergency existed. However, we do not think the issue here turns upon the sufficiency of the instructions as given.

The emergency doctrine in connection with contributory negligence has applicability only in case negligence by the defendant is established. (1 Shearman and Redfield on Negligence, Rev. ed., 238, § 101; 3 Cooley on Torts, 4th ed., 416, § 488.) But the jury absolved the defendants in this case of all negligence. While there was conflicting evidence, there was ample evidence to support the jury's findings. It was undisputed that the right front end of the Nichols car collided with the right front end of the defendants' truck. A number of witnesses who were at the scene soon after the

accident testified that the collision took place near the north side of the highway; that the right rear wheel of the truck was close to the weed line on the north side of the highway; that there was ample room to pass on the south side of the truck. There was also testimony that the defendants' truck had been traveling in the track on the north side of the highway for a considerable distance before the collision occurred. It is unnecessary to recite other testimony which supports the findings of the jury.

Appellant readily concedes that it is not our function to weigh conflicting evidence, but only to determine whether there was any substantial evidence to support the jury's finding of facts. But appellant urges that failure to give the requested instruction so altered the situation confronted by the jury that we should not here treat as controlling its finding that the defendants were not negligent. As we understand the argument, it is that the jury probably believed, in the absence of the instruction requested, that it always constitutes negligence for a car to be traveling on the wrong side of the highway; that if they had known that under the emergency doctrine Nichols might have been on the wrong side without being guilty of negligence they might have, in their deliberations, first exonerated him and the appellant and that then they might have found Derry, the truck driver, guilty of negligence on the theory that some one must have been negligent or the accident would not have happened. In the first place, this imaginary chain of reasoning overlooks the theory that they might have found that no one was negligent and the collision was an unavoidable accident. Be that as it may, we cannot, in the face of such ample evidence to support the finding that defendants were not negligent, indulge a speculative excursion into the phychological reactions of the jury room. The natural and logical procedure, in harmony with the correct instructions given, was for the jury first to consider whether the defendant truck driver was guilty of negligence. If he was not —and the jury so found—then it made no difference whether appellant or her son believed an emergency existed and took a course of action justified under the emergency doctrine. We find no ground to justify upsetting the verdict.

The judgment is affirmed.